## PIERRON v PRUDENTIAL INS. CO. OF AMERICA

Ohio Appeals, 2nd Dist, Montgomery Co.

No. 1565. Decided Jan. 27, 1940.

668

Carl H. Valentine, Columbus, for defendant-appellant.

T. J. Duffy, Columbus, Ruey T. Hodapp, Dayton, for plaintiff-appellee.

## OPINION

By HORNBECK, PJ.

This is an appeal from a judgment in behalf of the plaintiff against the defendant, a self insurer, under the Workmen's Compensation Law.

The second amended petition avers that the plaintiff, while acting in the course of employment as an insurance agent collecting premiums for defendant company, fell through a trap door into the basement of the home of a Mr. Louis Schreck and sustained injuries to his head, hand, elbow and hip as a result of which he became disabled, unable to perform any kind of employment since March 23, 1933, and at the time of the application to the Industrial Commission he was totally disabled because of said injuries. It is averred that plaintiff made application for compensation on account of said injuries which application was on December 27, 1933, denied because the commission had no jurisdiction of the claim and no authority to inquire into the extent of disability or amount of compensation claimed; that thereafter on January 17, 1934, plaintiff made application for rehearing, which, on August 24, 1936, on rehearing was denied by the commission "because it had no jurisdiction of the claim and no authority to inquire into the extent of the disability or amount of compensation claimed."

The answer was an admission that the plaintiff had fallen through a trap door into the basement, made application to the Industrial Commission for compensation on account of injuries alleged to have been sustained in the accident and a general denial of all other allegations of the second amended petition.

The cause came on to trial. Jury was waived and the cause submitted to the trial judge who found for the plaintiff and entered judgment on the finding against the defendant. The appeal on questions of law is directed to the judgment.

Five errors are assigned which, as set forth in the brief, may be covered under three headings. First, error in the reception and rejection of testimony. Second, error in refusing to enter judgment for the defendant as a matter of law. Third, that the finding and judgment are manifestly against the weight of the evidence.

## RECEPTION OF THE RECORD.

We have heretofore stated that plaintiff averred the denial of his application for compensation for injuries suffered on the ground that the commission had no jurisdiction of the claim and that on rehearing the commission again denied the application for the same reason.

The record fails to disclose any order of the Commission immediately referable to any action on the original application of plaintiff for compensation.

In the application of the plaintiff for rehearing it is set forth that the Commission on December 27, 1933, made a finding as follows:

"It is the finding of the commission that proof of record fails to show claimant's disability is due to alleged injuries sustained while in the employ of the employer named herein. It is, therefore, ordered that the claim be disallowed."

This averment, of course, does not take the place of a formal order of the commission.

The commission granted a rehearing to plaintiff, named a Referee to take the testimony, the record was made and thereafter the commission made the following order,

"This day this claim comes on to be heard on the transcript of testimony and evidence on rehearing and report of the Referee, and was considered by the commission.·

On consideration thereof, the commission finds:

Disallowed on rehearing.

It has no jurisdiction of the claim and no authority thereby to inquire into the extent of the disability or amount of compensation claimed.

It is, therefore, ordered that the claim be disallowed."

Counsel for defendant · objected to the introduction of the record of the Commission for the reason that the record does not show the necessary action by the Commission to authorize the trial judge to proceed with the trial for the reason that there is no denial on jurisdictional grounds of the claim of the plaintiff as set forth in his original application.

It is doubtful indeed if the question was raised in the proper manner because it was necessary that the trial judge have the record before him to exemplify the alleged inadequacy of plaintiff's proof. So that, in probability the proper procedure would have been a motion for dismissal for failure of proof of jurisdiction of the Common Pleas Court. However, counsel raised and made plain the question which he desired to make in timely manner both by demurrers to the original petition, to the amended petition and by the motion at the time the cause came on for trial.

It is the position of defendant that the Common Pleas Court had no jurisdiction to entertain the claim set forth by the plaintiff because of the failure of the record to disclose two jurisdictional steps, namely (1) the denial in the first instance of the application of plaintiff upon jurisdictional grounds and thereafter (2) denial upon the same grounds after the rehearing. Two cases are relied upon, **State ex Depalo v Industrial Commission, 128 Oh St 410; The Metal Specialty Company v Gregory, et, 128 Oh St 452. Simmons v Industrial Commission, 134 Oh St 456,** is also discussed. Counsel for plaintiff have cited, among other cases, **Industrial Commission v Phillips, 114 Oh St 607, State ex Cezkovesky v Industrial Commission, 126 Oh St 434.**

It may be stated broadly that our Supreme Court has held that the whole record of the action of the Commission should be considered to determine whether or not a claim has been denied because it has no jurisdiction to act upon it or whether it has entertained jurisdiction, fixed compensation, awarded or refused to award compensation.

We are content to rely in this case upon the state of the record wherein there appears no entry journalizing the order, if any made, of the Commission on its hearing on the original application of plaintiff for compensation, inasmuch as the finding of the Commission on the rehearing of the claim clearly sets forth a denial thereof on jurisdictional grounds. It is the action of the Commission upon the rehearing of the denial of the claim of plaintiff

which supports his right to file a petition in the Common Pleas Court. That part of the section which clothed plaintiff with authority to proceed in the Common Pleas Court is as follows: §1465-90 GC.

"If the commission, after such hearing (i. e. rehearing) finds that it has no jursidiction of the claim and no authority to inquire into the extent of disability or amount of compensation claimed, then the claimant, * * * may file a petition in the Common Pleas Court of the county wherein the injury was inflicted, * * *."

It will be noted that at no time did the defendant interpose any objection to the application for rehearing or to proceeding with the rehearing. Appellant is in no better position than the commission which could not be heard to say that it had not denied the claim on jurisdictional grounds inasmuch as it entertained the application for rehearing, allowed it, considered and acted upon it and denied it upon jurisdictional grounds.

REFUSAL TO ADMIT TESTIMONY

The next assigned error is directed to the refusal of the trial judge to admit on cross-examination the answer of Dr. Michael R. Haley to question No. 44 of his testimony.

Plaintiff's counsel had concluded his interrogation of Dr. Haley with question No. 43 as follows:

"Well, doctor, was it possible for this patient to have sustained the disability that you found after examination and treatment by falling through a hole that is commonly known as a cellarway into a basement, some 6 ft. deep, and landing on the buttocks in a stooping condition, partly on the bottom step, the entrance way being what is commonly known as a trap door?
A. In my opinion it could have caused this condition * * *."

The Referee sustained an objection to the question and ruled out the proffered answer, as did the trial judge. Thereafter follows question No. 44:

"Q. Such a condition, Doctor, could have resulted from any one of a large number of other causes, could it not?
A. I suppose it could."

The court on objection refused to accept the testimony. This is assigned as error and counsel correctly sets forth the rule that it is proper on cross-examination to inquire of the witness as to all matters which would have been competent on direct examination.

The infirmity in the answer is that it has no probative effect without the answer to question No. 43. Obviously, an isolated statement of the doctor to the effect that he supposes that plaintiff's condition could have resulted from any one of a large number of other causes has no meaning unless you have the one cause from which the doctor has said it could have resulted.

REFUSAL TO ENTER JUDGMENT.

The next error is based upon the claim that the plaintiff has failed as a matter of law to establish his case in that there is no showing of causal relation of the original injury and the permanent disability upon which plaintiff bases his claim for compensation.

The record in this case is most unsatisfactory. Able counsel for defendant was alert at all times in protecting the interests of his client. After the Referee and the trial judge had completed their rulings on the admissibility of the evidence there was not a great deal left of the testimony of the doctors.

There are several instances wherein the Referee and the Trial Judge refused to permit questions which were proper. This, of course, does not affect any claimed error before us because the plaintiff is not prosecuting an appeal and our observations are made only to the end that they may be of some help in the future.

When the Referee sustained an objection to a question by plaintiff's counsel it is seldom that the answer of the witness was proffered. Plaintiff, of course, had this right under the rules of proof and specifically accorded to him by §1465-90.

A question which was proper and as to which the answer was probative is No. 17, page 25 of the record, to Dr. W. R. Hochwalt,

"Q. Doctor, assuming the patient fell through an opening in the floor, known as a trap door, while walking from one room to another striking the last step at the foot of the stairway in a sitting position, would such a fall produce the injuries and disability which you found? A. It could."

Although very meager, the hypotheses in this question were supported by the record. We do not know why the answer was not accepted but assume that it was because it did not reach a degree of probability but only had the effect of a possibility that the disability claimed could have resulted from the happenng of the events as set forth in the question. The obligation of the plaintiff is to make █ proof of ⸍is claim to the degree of probability but that does not preclude the admission of testimony which may not in itself attain to the requisite degree of proof. Let us assume that the doctor's answer to the question would have been, "It could not". Would it be doubted that it was competent? If the proffered answer to the question was all that the record afforded, it would not support a judgment for the plaintiff but he had the right to the benefit of the answer and in the event that he had any other proof which in combination with the answer to question No. 17 would support a finding in his behalf he had met his obligation of proof.

## WEIGHT OF THE EVIDENCE

We learn from the record that the plaintiff fell down a stairway into an unlighted basement. The number of steps in the stairway and the distance between them does not appear, but we know that there were more than three steps because one witnss speaks of the three bottom steps. Plaintiff was a man weighing more than 200 lbs. When he reached the bottom step he struck and injured his left hand, the back of his head and his left elbow and left hip. He did not consult a physician from October 14, 1931 until November 18, 1932. However, it appears that it was necessary for two persons to assist plaintiff up the stairway down which he had fallen and into his automobile; that he favored his left leg noticeably; that he could not sleep the night of the injury and thereafter for some time because of the pain in his hip and back; that although he continued to do his work his condition grew progressively worse. Soon after the accident he was not able to sit in a chair with comfort because of the condition of his hip, his condition grew progressively worse, the muscles in the vicinity of the left hip atrophied. He held his hand on his left hip as he moved about, limped perceptibly, was compelled to use a cane and finally in March 1933, could no longer continue his employment and from that time until the date of the trial had been physically incapacitated from any work.

Dr. Michael R. Haley, whom he first consulted, said that plaintiff had complained of pain in his back down to the knee and on the left side; that his mode of walking was changed, limited on the left side; that he walks with a limp; that the patient's back was strapped. Dr. W. R. Hochwalt, to whom Dr. Haley referred the plaintiff, examined him and found that there was tenderness localized over the left sacroiliac joint, sacral spinus and sacro-tubers ligaments. Straight leg raising on the left was limited to 50 degrees and caused pain to the extreme. All motions of the lumbar spine in the erect position were limited. There was two inch of atrophy of the left thigh; reflexes were all normal, patient was unable to distinguish between sharp

672

and dull over the entire left side to the mid-line. It was necessary for plaintiff to wear a sacro-iliac brace.

It will be noted that the petition says nothing about the sacro-iliac injury, although, we can not understand why it was omitted when counsel had the benefit of the finding of their own doctor wherein it was set forth. However, the testimony as to the manner and extent of injuries went into the record without objection and for that reason was by consent submitted to the court. In any event we are satisfied that the effects which the physicians found had such relation to the original injuries as to be causally connected therewith.

It further appeared from disinterested witnesses that prior to plaintiff's fall he was strong, alert and well and that thereafter he was continuously and progressively affected as heretofore stated.

On the record, it may be said that upon the medical testimony alone the plaintiff has not made his case and if this is a prerequisite he must fail. The trial judge held that inferences could properly be drawn from the testimony of the lay witnesses in conjunction with the findings of the physicians to support a finding and judgment for the plaintiff. With this conclusion we are in accord, not only as a matter of law but upon the obligation of the plaintiff to prove his case by preponderance of the evidence.

Some of the afflictions from which plaintiff suffered the trial court could not say, without expert testimony, were the result of his fall, in particular the abscess which developed in plaintiff's rectum.

The probative effect of the testimony of the plaintiff and his lay witnesses renders probable the conclusion that the conditions with which he was affected at the time of his application for compensation were proximate results of the injuries which he suffered when he fell into the cellar.

We find no error prejudicial to the defendant in the record. The judgment will be affirmed.

GEIGER and BARNES, JJ., concur.